## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

**JESSE ALAN WALKER,**

     **Plaintiff,**

**vs.**                           **Case No.  4:22cv10-MW-MAF**

**RICKY DIXON, et al.,**

     **Defendants.**

**_____/**

## REPORT AND RECOMMENDATION

*Pro se* Plaintiff, a former prisoner of the Florida Department of Corrections ("FLDOC"), is proceeding on a second amended complaint [hereinafter "complaint"], ECF No. 40, in this civil rights action brought pursuant to 42 U.S.C. § 1983.  Pending before the Court is a motion to dismiss filed by Defendant FLDOC Secretary Ricky Dixon, former FLDOC Secretary Mark Inch, Assistant Warden Brown, and State Classification Officer Robert Gould.  ECF No. 43.  These Defendants contend that they are entitled to dismissal on several grounds, which include failure to exhaust administrative remedies, failure to state a constitutional violation or a claim upon which relief may be granted, failure to state a claim for

supervisory liability, and failure to show irreparable harm necessary to support injunctive relief.  ECF No. 43 at 8-24.  Defendants subsequently withdrew their argument that Plaintiff failed to exhaust his administrative remedies, so the Court need not consider it.  *See* ECF No. 46.

Plaintiff has responded, ECF No. 48, and the motion is ripe for resolution.  Upon due consideration, the undersigned respectfully **RECOMMENDS** that the Defendants' motion be **GRANTED IN PART** and **DENIED IN PART**.  Plaintiff's claims against Secretaries Inch and Dixon and Assistant Warden Brown are due to be dismissed for the reasons discussed below.  Plaintiff, however, has sufficiently pleaded a failure-to-protect claim against Officer Gould.

## I.    PLAINTIFF'S ALLEGATIONS, ECF No. 40

Plaintiff's allegations, taken as true, are as follows:  While Plaintiff was incarcerated at the Wakulla Correctional Institution ("WCI") in February of 2020, WCI staff engaged in a well-coordinated campaign of retaliation against him.  ECF No. 40 at 4.  The retaliation was in payback for Plaintiff's

having filed a civil rights action against FLDOC prison officials.[1]  ECF No. 40 at 4.  In addition, WCI staff retaliated against Plaintiff for cooperating with the Federal Bureau of Investigation's ("FBI") investigation of allegations of corruption and abuse within the FLDOC prison system, as well as for Plaintiff's speaking to the press about the alleged corruption.  *Id*.  At the direction of WCI staff, other WCI prison inmates threatened Plaintiff on multiple occasions such that he sought protective confinement on February 12, 2020.  *Id*.

On February 12, 2020, Plaintiff was placed in protective confinement.  *Id*. On February 18, 2020, Defendant Assistant Warden Brown, along with two other defendants who are not subject to the instant motion to dismiss, reviewed Plaintiff's protective confinement.  *Id*. at 5.

Defendant Classification Officer Gould "ha[d] explicit knowledge of the threats posed to plaintiff as well as knowledge of the active illicit operations of institutional staff who had been harassing and threatening plaintiff[.]"  *Id*.  Despite this knowledge, Gould denied Plaintiff's repeated

---

[1] *See Jesse Alan Walker v. Mark Inch*, No. 3:17-cv-206-MCR-HTK (N.D. Fla.).

"requests, appeals and grievances for transfer to a different protective management facility" where he could be safe.  ECF No. 40 at 5. Consequently, Plaintiff was subjected to a "near constant barrage of physical, mental and emotional abuse which included surreptitious administration of hallucinogenic substances in state-provided meals and beverages, causing Plaintiff to become susceptible to psychological breakdowns."  *Id.*

Between mid-May 2020 and September 24, 2020, Plaintiff was in and out of protective confinement due to ongoing threats, intimidation, and harassment perpetrated against him by other inmates at the direction of WCI staff.  *Id.* at 5-7.  On the afternoon of September 24, 2020, Plaintiff was brutally beaten by a group of inmates who told him that, "You had this coming."  *Id.* at 7.  Plaintiff was knocked unconscious in the attack and awoke to a broken jaw and head injuries.  *Id.*  The attackers notified WCI staff that Plaintiff required medical attention because he had "slipped."  *Id.* Based upon the design and layout of the prison unit where Plaintiff was brutally beaten, WCI staff would have observed the attack; yet staff failed to intervene. *Id.*

After the attack, WCI staff waited one hour to take Plaintiff to medical for treatment.  ECF No. 40 at 7.  All the while, Plaintiff was barely able to stand or walk, and blood was pouring from his mouth and face.  *Id*. Once Plaintiff was escorted to the medical building, no medical staff member was available to treat Plaintiff's injuries.  *Id*.  WCI staff, therefore, returned Plaintiff to his dorm, where he waited for two (2) hours on a concrete floor in excruciating pain.  *Id*. at 7-8.  WCI staff purposely delayed Plaintiff's medical treatment to increase Plaintiff's "distress and allow his broken jaw to become more swollen with the specific intent of adding mental duress for the purpose of reducing Plaintiff's willingness to report the details of the abuse[.]"  *Id*. at 7.

After two hours went by, Plaintiff was finally returned to medical for evaluation then transported straight away to Tallahassee Memorial Hospital ("TMH") for emergency treatment. *Id*. at 8.  TMH evaluated and diagnosed Plaintiff with "[i]ntercranial hemorrhage, skull fracture, facial bone fractures, grossly manipulated mandible fractures, [and] L-spine fracture."  *Id*. Plaintiff was hospitalized for five (5) days and underwent surgery to repair his broken left jaw.  *Id*.

Throughout Plaintiff's hospitalization and subsequent stay at the prison infirmary, WCI staff subjected Plaintiff to intimidation tactics to dissuade him from reporting the September 24, 2020 attack.  ECF No. 40 at 8-9. Such intimidation tactics included officers' "removing from their holsters their handguns and manipulating the ammo magazines as well as cocking the slides and chambering the rounds" while Plaintiff was "shackled to his hospital bed."  *Id*.  Officers also "test[ed] their Stun Guns causing a menacing and crackling sound and blue sparks of high voltage within feet of Plaintiff's hospital bed."  *Id*. at 9.

On November 1, 2020, Plaintiff was released from the prison infirmary and returned to the general prison population where he endured further harassment designed to keep Plaintiff from filing grievances or complaints related to the September 24, 2020 attack.  *Id*.

Plaintiff alleges that WCI staff's conduct described above violated his First Amendment and Eighth Amendment rights.  *Id*. at 10-11.  Plaintiff says that his First Amendment rights were violated by WCI staff's repeated acts of retaliation for Plaintiff's filing a federal civil rights lawsuit against FLDOC officials and for Plaintiff's speaking with the FBI and the press about

alleged FLDOC corruption.  ECF No. 40. Second, Plaintiff says that his

Eighth Amendment rights were violated when Defendants (1) failed to

protect him from other inmates who brutally beat him on September 24,

2020—at the direction of WCI staff—and (2) because WCI staff were

deliberately indifferent to Plaintiff's serious medical needs after the attack.

*Id*. at 7-8.  Plaintiff also alleges that Defendants failed to adequately train

and supervise WCI staff, which resulted in his injuries.  *Id*. at 11. For relief,

Plaintiff seeks an injunction enjoining FLDOC employees from violating

Plaintiff's constitutional rights in the future and preventing them from

secretly communicating about Plaintiff or any of his associates.  *Id*. at 12.

Plaintiff also seeks $150,000 in compensatory damages and $250,000 in

punitive damages against former Secretary Inch, Assistant Warden Brown,

and Officer Gould in their individual capacities. *Id*. at 11.

## II.    DISCUSSION

**Rule 12(b)(6) Standard of Review**

Whether a complaint should be dismissed pursuant to Fed. R. Civ. P.

12(b)(6) for failing to state a claim upon which relief can be granted turns

on whether the plaintiff has alleged enough plausible facts to support the

claim stated. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955).[4] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949 (*citing Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965); *see also Wilborn v. Jones*, 761 F. App'x 908, 910 (11th Cir. 2019) (per curiam). "The plausibility standard" is not the same as a "probability requirement," and "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949. (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). A complaint that

---

[4] The complaint's allegations must be accepted as true when ruling on a motion to dismiss, *Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir. 1992), and dismissal is not permissible because of "a judge's disbelief of a complaint's factual allegations." *Twombly*, 127 S.Ct. at 1965, (quoting *Neitzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)).

"pleads facts that are 'merely consistent with' a defendant's liability," falls

"short of the line between possibility and plausibility of 'entitlement to

relief.'" *Iqbal*, 129 556 U.S. at 678, 129 S.Ct. at 1949 (quoting *Twombly*,

550 U.S. at 557, 127 S.Ct. 1955).

The pleading standard is not heightened, but flexible, in line with

Federal Rule of Civil Procedure 8's command to simply give "fair notice" to

the defendant of the plaintiff's claim and the grounds upon which it rests.

*Swierkiewicz v. Sorema*, 534 U.S. 506, 513, 122 S.Ct. 992, 998, 152

L.Ed.2d 1 (2002) ("Rule 8(a)'s simplified pleading standard applies to all

civil actions, with limited exceptions."). *Pro se* complaints are held to" less

stringent standards than are pleadings drafted by an attorney." *Wright v.

Newsome*, 795 F.2d 964, 967 (11th Cir. 1986) (per curiam) (*citing Haines v.

Kerner*, 404 U.S. 519, 520-521, 92 S. Ct. 594, 596, 30 L. Ed. 2d 652

(1972)).  Nevertheless, a complaint must provide sufficient notice of the

claim and the grounds upon which it rests so that a "largely groundless

claim" does not proceed through discovery and "take up the time of a

number of other people, with the right to do so representing an in terrorem

increment of settlement value, rather than a reasonably founded hope that

the [discovery] process will reveal relevant evidence." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347, 125 S.Ct. 1627, 1634, 161 L.Ed.2d 577 (2005) (citation omitted) (alteration in original).

### Motion to Dismiss for Failure to State a Claim, ECF No. 43

Defendants contend that Plaintiff's claims must be dismissed, essentially, because they cannot be held liable under section 1983 on a theory of respondeat superior. *See* ECF No. 43 at 19-21. Defendants also argue that Plaintiff's request for an injunction should be denied because he is no longer confined in a FLDOC facility. The Court agrees that Plaintiff's section 1983 claims asserted against Secretaries Dixon and Inch and Assistant Warden Brown must be dismissed and that Plaintiff's request for an injunction is due to be denied. Plaintiff, however, sufficiently states a section 1983 claim for failure-to-protect against Officer Gould, as discussed below.

### Analysis

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) the defendant deprived him of a right secured under the Constitution or federal law, and (2) the deprivation occurred under color of state law. *See*

11

*Bingham v. Thomas,* 654 F.3d 1171, 1175 (11th Cir. 2011) (citation omitted).  To establish a section 1983 claim, a plaintiff must show that the conduct complained of was the "but for" and proximate cause of their injuries. *See Smith v. City of Oak Hill*, 587 F. App'x 524, 527 (11th Cir. 2014) (per curiam). "But for" causation exists when a plaintiff shows that "except for the constitutional tort, such injuries and damages would not have occurred." *Id.* [2]

Pertinent to the instant motion, "[i]t is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (citation and internal quotation marks omitted). Instead, supervisory liability under section 1983 arises either when "the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection

---

[2] Proximate causation exists when "the injury or damage was a foreseeable consequence of the [defendant's] act or omission." *Jackson v. Sauls*, 206 F.3d 1156, 1168 (11th Cir. 2000). Questions of proximate causation are almost always left to a jury. *See id. See also Sanders v. Lull Int'l, Inc.*, 411 F.3d 1266, 1271 (11th Cir. 2005).

12

between the actions of a supervising official and the alleged constitutional deprivation." *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted).

The necessary causal connection can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so[.]" *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003). "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Hartley*, 193 F.3d at 1269 (citation omitted).

The causal connection may also be established when a supervisor's "custom or policy resulted in deliberate indifference to constitutional rights" or when "facts… support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Gonzalez*, 325 F.3d at 1234-35.

"The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Cottone v.*

*Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (citation and quotation marks omitted).  In light of these principles, the Court addresses Plaintiff's section 1983 claims against former Secretary In, Assistant Warden Brown, and Classification Officer Gould.

<u>Plaintiff has no Section 1983 claim against Inch or Brown</u>.

Plaintiff alleges that, at the time of the events complained of, former Secretary Inch was the FLDOC Secretary and Brown was the WCI Assistant Warden.  ECF No. 40 at 2-3.  Beyond their supervisory roles, Plaintiff does not allege any actions or omissions taken by Inch or Brown that "caused" the alleged constitutional violations.  Further, Plaintiff does not allege that these Defendants adopted a policy or custom that violated Plaintiff's rights, or that the abuse at WCI was so "widespread" such that these Defendants were on notice of "obvious, flagrant, rampant" violations "of continued duration, rather than isolated occurrences."  Although Plaintiff did grieve WCI staff alleged corruption and gang-related activities that posed a threat to Plaintiff to both the Secretary and to the Warden, Plaintiff's grievances alone are not sufficient to establish the type of notice of widespread abuse that would render Inch or Brown liable under section

1983.  *See Hendrix v. Tucker*, 535 F. App'x 803, 805 (11th Cir. 2013) (per curiam) (prisoner's grievances and state court litigation did not put FLDOC Secretary and Warden on notice so as to make them vicariously liable under section 1983) (*citing Hartley,* 193 F.3d at 1269).

The same is true for Plaintiff's failure-to-train and failure-to-supervise claims.  Failure-to-train and failure-to-supervise are separate claims.  *See Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) (observing that there are only "limited circumstances" in which an allegation of a failure to train or supervise can be the basis for liability under section 1983); *Thomas ex rel. Thomas v. Roberts*, 261 F.3d 1160, 1175 (11th Cir. 2001) (analyzing failure-to-train and failure-to-supervise claims separately).  That said, the standard for liability is the same for both claims. *Dubose v. City of Hueytown*, No. CV-BE-852-S, 2016 WL 3854241, at *8 (N.D. Ala. Jul. 15, 2016) ("[W]hile the failure to train, supervise, and discipline can be separate claims, the same standard for liability applies[.]") (*citing Gold*, 151 F.3d at 150 as addressing failure-to-supervise claims, and *Shehada v. Tavss*, 965 F. Supp.2d 1358, 1375 (S.D. Fla. 2013) as addressing failure-to-train claims).

A supervisor can be held liable for failing to train his or her employees "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [officers] come into contact." *See City of Canton, Ohio v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989); *see also Belcher v. City of Foley, Ala.,* 30 F.3d 1390, 1397 (11th Cir. 1994) ("A supervisory official is not liable under section 1983 for an injury resulting from his failure to train subordinates unless his failure to train amounts to deliberate indifference to the rights of persons with whom the subordinates come into contact and the failure has actually caused the injury of which the plaintiff complains." (citations and internal quotation marks omitted)). Thus, a plaintiff alleging a constitutional violation premised on a failure to train must demonstrate that the supervisor had "actual or constructive notice that a particular omission in their training program causes [his or her] employees to violate citizens' constitutional rights," and that armed with that knowledge the supervisor "chose to retain that training program." *Connick v. Thompson,* 563 U.S. 51, 61, 131 S.Ct. 1350, 1360, 179 L.Ed.2d 417 (2011) (citations omitted).

To establish a failure-to-train claim under section 1983, a plaintiff must show (1) that the existing training program is inadequate; (2) that adequate training would have prevented the injury; and (3) that the supervisor's failure to adequately train the employees amounts to deliberate indifference to the rights of persons with whom the employees come into contact. contact. *See City of Canton,* 489 U.S. at 388-91, 109 S.Ct. at 1204-06. Deliberate indifference requires that "the supervisor had actual or constructive notice that a particular omission in the training program" caused the injury, and that "armed with that knowledge the supervisor chose to retain that training program." *Keith v. DeKalb Cty., Ga.*, 749 F.3d 1043, 1052 (11th Cir. 2014) (citation omitted). Ordinarily, "a pattern of similar constitutional violations by untrained employees" is necessary to establish actual or constructive notice. *Id.* at 1053 (citation omitted). But in some circumstances, the consequences of failing to train employees may be "so obvious, and the inadequacy so likely to result in the violation of constitutional rights," that pointing to a pattern of similar violations is unnecessary. *City of Canton*, 489 U.S. at 390, 109 S.Ct. at 1206.

Case No. 4:21cv10-MW-MAF

In this case, Plaintiff fails to allege any training program, let alone one that was inadequate.  Further, Plaintiff fails to allege that "but for" the inadequate training of WCI staff, his constitutional rights would not have been violated.  Finally, Plaintiff fails to allege any pattern of similar violations committed by WCI staff; he alleges only that the violations were directed towards him.  Accordingly, Plaintiff fails to state a failure-to-train claim against former Secretary Inch or Assistant Warden Brown.

As for a failure-to-supervise claim under section 1983, Plaintiff must show that Inch and Brown (1) failed to discipline WCI staff for the deprivations; (2) that adequate discipline would have corrected the violations; and (3) that their failure to discipline amounts to deliberate indifference.  *See City of Canton*, 489 U.S. at 388-89, 109 S.Ct. at 1206.  If a supervisor is on notice of widespread abuse, he or she has a duty to take adequate steps to stop the misconduct.  *See Keith*, 749 F.3d at 1048 (stating that a supervisor is liable under section 1983 for the unconstitutional acts of his subordinates "when a history of widespread abuse puts the supervisor on notice of the need to correction the alleged deprivation, and he fails to do so.") (citation omitted).

Case No. 4:21cv10-MW-MAF

Turning to Plaintiff's complaint, none of Plaintiff's allegations supports a failure-to-supervise claim against either former Secretary Inch or Assistant Warden Brown.  First, Plaintiff makes no mention of their having failed to discipline WCI staff for the alleged constitutional violations.  Nor does Plaintiff say that, had WCI staff been disciplined, the abuse would have ceased.  Finally, in the absence of these allegations, Plaintiff has not established that the failure to discipline WCI staff amounted to deliberate indifference.  Accordingly, Plaintiff has not stated a failure-to-supervise claim against former Secretary Inch or Assistant Warden Brown.

In sum, taking Plaintiff's allegations as true, Plaintiff has failed to show a causal connection between the actions or omissions of Inch and Brown and the alleged use of excessive force, the alleged medical deliberate indifference, and the alleged retaliation against Plaintiff allegedly perpetrated by WCI staff.  Further, Plaintiff has not alleged any custom or policy that resulted in the violation of his rights that would render Inch or Brown vicariously liable for WCI staff actions under section 1983.  Finally, Plaintiff failed to plead facts that establish that Inch or Brown failed to train or supervise WCI staff such that they are subject to section 1983 liability.

Case No. 4:21cv10-MW-MAF

Accordingly, Plaintiff's section 1983 claims against Inch and Brown are due to be dismissed.

<u>Plaintiff sufficiently states a Section 1983 claim against Gould</u>.

Contrary to the discussion above where Plaintiff failed to show a causal connection between the actions or omissions of Secretary Inch and Assistant Warden Brown and Plaintiff's injuries, Plaintiff sufficiently alleges a causal connection between Officer Gould's actions or omissions and Plaintiff's injuries.  Plaintiff alleges that Officer Gould knew both about WCI staff's "illicit" activities and about staff's threats and harassment of Plaintiff which posed a risk of serious harm to him.  ECF No 40 at 5. Despite this knowledge, Gould allegedly denied Plaintiff's repeated "requests, appeals, grievances for transfer to a different protective management facility" where he could be safe.  *Id*.  Because Plaintiff was not transferred out of WCI, Plaintiff was subjected to three (3) months of constant physical, mental and emotional abuse at WCI, including Plaintiff's being drugged and poisoned by WCI staff. *Id*.  Plaintiff was ultimately brutally beaten by other inmates at the direction of WCI staff such that e required surgery and hospitalization for five (5) days.  *Id*. at 5-8.

20

Such allegations are sufficient to support a section 1983 claim against Officer Gould.  To be held liable under the Eighth Amendment for failing to prevent an attack from other inmates, a correctional official must be found to have known and recklessly disregarded "an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994). When officials become aware of threats to an inmate's health and safety, the Eighth Amendment proscription against cruel and unusual punishment imposes a duty to provide reasonable protection. *Marsh v. Butler County, Ala.,* 268 F.3d 1014, 1027 (11th Cir. 2001), abrogated on other grounds by *Twombly*.

While an officer has an affirmative duty to prevent another from violating an individual's constitutional rights, the officer must have a realistic opportunity to prevent the illegal conduct.  *See Ensley v. Soper,* 142 F.3d 1402, 1407-08 (11th Cir. 1998); *see also Byrd v. Clark,* 783 F.2d 1002, 1007 (11th Cir. 1986) (stating that where an unprovoked beating takes place in the officer's presence, he can be liable under section 1983 if he

21

fails to intervene). Finally, a merely negligent failure to protect an inmate does not state a claim under section 1983. *Davidson v. Cannon,* 474 U.S. 344, 347-48, 106 S.Ct. 668, 670-71, 88 L.Ed.2d 677 (1986) (citations omitted).

In the case at hand, Plaintiff alleges that Gould knew that Plaintiff was in serious danger while he was at WCI, that Plaintiff repeatedly requested to be transferred to a safer facility for fear of his life, that Gould had it within his power to move Plaintiff to a safer facility, that Gould failed to take reasonable steps to protect Plaintiff from other inmates who had made death threats against him, and that Plaintiff was poisoned and severely injured as a result. In sum, Plaintiff has sufficiently pleaded that Gould failed to protect him in violation of the Eighth Amendment.[3]

---

[3] In their motion to dismiss, Defendants do not assert the defense of qualified immunity. *See* ECF No. 43. Qualified immunity is an affirmative defense to personal liability, which must be pleaded, and if it is not, it is deemed waived. *Moore v. Morgan,* 922 F.2d 1553, 1557 (11th Cir. 1991) (citations omitted). However, qualified immunity can be pleaded at various stages in a case. The Eleventh Circuit has held that qualified immunity is a question of law that may be generally asserted (1) on a pretrial motion to dismiss under Rule 12(b)(6) for failure to state a claim; (2) as an affirmative defense in the request for judgment on the pleadings pursuant to Rule 12; (3) on a summary judgment motion pursuant to Rule 56; or (4) at trial. *Ansley v. Heinrich,* 925 F.2d 1339, 1347 (11th Cir. 1991).

Now the Court turns to Plaintiff's excessive force, medical deliberate indifference, and retaliation claims against Gould.  Here, Plaintiff fails to state a claim. That is because Plaintiff does not allege that Gould personally participated in the September 24, 2020 attack, or that Gould was involved in WCI's failure to provide him medical attention after the attack. Also, Plaintiff does not allege that Gould participated in or authorized the harassment Plaintiff allegedly suffered in violation of his First Amendment rights.  As a result, Plaintiff's excessive force, medical deliberate indifference, and retaliation claims against Gould are due to be dismissed.

**Plaintiff's Request for Injunction**

Lastly, Plaintiff requests injunctive relief in the form of a restraining order against Defendants to—

> deter any further deprivations of Plaintiff's civil rights, including but not limited to orders mandating that any and all FDC employees who interact with Defendant do so in a professional manner which complies with all state and federal laws, and that no secretive communications or directives are dispatched from Defendants to other FDC employees, including but not limited to FDC Community Supervision Officers as well as any and all cooperating law enforcement agencies and civilian associates of Defendants.

23

ECF No. 40 at 12.[4]  As Plaintiff is no longer in FLDOC custody, his request

for injunctive relief is moot.  "Absent class certification, an inmate's claim

for injunctive and declaratory relief in a section 1983 fails to present a case

or controversy once the inmate has been transferred" or released.  *Wahl v.*

*McIver*, 773 F.2d 1169, 1173 (11th Cir. 1985) (per curiam) (citation

omitted). "Past exposure to illegal conduct does not constitute a present

case or controversy involving injunctive relief if unaccompanied by any

continuing, present adverse effects."  *Id*. at 1173-74 (*citing O'Shea v.*

*Littleton,* 414 U.S. 488, 495-96, 94 S.Ct. 669, 675–76, 38 L.Ed.2d 674

(1974)).

Accordingly, Plaintiff's request for an injunction is due to be denied.

## III.    CONCLUSION

In view of the foregoing, the Court concludes that Plaintiff fails to

state a section 1983 claim against Secretary Dixon, former Secretary Inch,

and Assistant Warden Brown.  Plaintiff has, however, sufficiently pleaded a

failure-to-protect claim against Officer Gould.  Plaintiff has not, though,

---

[4] Plaintiff seeks only prospective relief against FLDOC Secretary Dixon in his official capacity.  ECF No. 40 at 2.

24

stated a claim for excessive force, medical deliberate indifference, or

retaliation against Gould.  Because Plaintiff is proceeding *pro se*, he should

be afforded the opportunity to amend the complaint to assert his

constitutional claims against the WCI personnel who personally participated

in the alleged deprivation of his federal rights.  *See Carter v. HSBC Mort.*

*Servs., Inc*. 622 F. App'x 783, 786 (11th Cir. 2015) (per curiam).

## <u>RECOMMENDATION</u>

It is respectfully **RECOMMENDED** that Defendants' motion to

dismiss, ECF No. 43, be **GRANTED IN PART** and **DENIED IN PART**.

Plaintiff's section 1983 claims against Defendants Ricky Dixon, Mark Inch,

and Assistant Warden Brown should be **DISMISSED without prejudice.**

Plaintiff's Eighth Amendment "failure-to-protect" claim against Classification

Officer Robert Gould should be permitted to proceed.  Defendant Gould

should thus be required to file an answer to Plaintiff's second amended

complaint, ECF No. 40. It is further **RECOMMENDED** that Plaintiff be

permitted to amend his complaint to assert his First Amendment and Eighth

Amendment claims against the WCI personnel who personally participated

in the alleged constitutional deprivations.  Finally, it is **RECOMMENDED**

that this case be **REMANDED** for further proceedings.

**IN CHAMBERS** at Tallahassee, Florida, on October 24, 2022.

 S/     Martin A. Fitzpatrick
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**This case was referred to the undersigned for the issuance of all preliminary orders and any recommendations regarding dispositive matters.  See N.D. Fla. Loc. R. 72(C); see also 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b).**

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.  An objecting party must serve a copy of its objections upon all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  See 11th Cir. Rule 3-1; 28 U.S.C. § 636.**